**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**DEWAYNE LaDALE TUGLE**                                             **PETITIONER**

**vs.**                                      **CIVIL ACTION NO.:  4:13CV12-SA-DAS**

**CHRISTOPHER EPPS, et al.**                                      **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

Petitioner, Dewayne LaDale Tugle, Mississippi prisoner no. 67752, has filed a federal

habeas petition pursuant to 28 U.S.C. § 2254, seeking to challenge his State court convictions

and sentences for attempted armed robbery, felon firearm possession, and felony fleeing.

Having considered the submission of the parties, the State court record, and the law applicable to

Petitioner's claims, the Court finds that the petition should be denied, for the reasons that follow.


### Background Facts and Procedural History

In October of 2007, William and Carolyn Garrett lived in Clarksdale, Mississippi.

Bonnie Brassel, Carolyn's sister, arrived at the Garrett home around 11:00 a.m. on October 24,

2007, intending to take Carolyn out to lunch to celebrate her birthday.  As she was walking

toward the back door of the house, Bonnie saw a man later identified as Petitioner approaching

her while aiming a gun at her.  Bonnie later described her assailant as a black, bald male with a

beard who was wearing a light-colored sweatshirt.  Bonnie screamed, which prompted William

Garrett to open the door to check on her.  William saw the assailant, whom he later identified as

Petitioner, point a pistol at him and demand money.  William tried to close the door, and

Petitioner tried to force his way into the home.  William was able to push the door shut and lock

1

it. William yelled for his wife to go get their gun, and the Garretts saw their assailant drive away in an older model brown pickup truck a few moments later. Carolyn brought Bonnie inside and called 911.

Coahoma County Sheriff's Deputy, Mario Magsby, received a call from dispatch about the armed robbery attempt and was advised that the suspect was a black male, bald, who had a beard, who was wearing a light-colored shirt, and who had fled the scene in a dark colored pickup truck traveling toward Clarksdale on Old Highway 61. While en route to the crime scene, Deputy Magsby saw a brown pickup truck driven by a black male, later identified as Petitioner, that failed to stop at a stop sign. The black male was wearing a white shirt and a red cap. Deputy Magsby testified that Petitioner turned "all the way around" to look at him as he passed the pickup. Deputy Magsby activated his blue lights, but instead of stopping, Petitioner sped up. Deputy Magsby testified at trial that Petitioner hydroplaned a couple of times but regained control of the vehicle before finally crashing the pickup into a parked car belonging to Ruthie Lott, who identified Petitioner at trial as the person she saw exiting the pickup truck. Petitioner fled the scene of the crash on foot.

Deputy Magsby and other officers began searching the area, and a white shirt and red cap were found nearby. Officers eventually caught Petitioner running through a backyard on an adjacent street, and he was taken into custody. A gun case containing a loaded .38 caliber pistol was found within one block of the crash. In the wrecked, abandoned pickup truck, officers found a wallet containing Petitioner's identification and a light colored sweatshirt. The pickup truck and the pistol were determined to belong to John Tugle, Petitioner's uncle.

Later the same day, Deputy Magsby went to the Garrett home and showed Bonnie,

2

Carolyn, and William a photographic lineup containing Petitioner's picture. None could identify Petitioner as the perpetrator of the crime, and William actually identified someone who was not Petitioner as his "best guess" as to the person who attempted to rob him.

Petitioner was first tried on a two-count indictment for felony fleeing and felon in possession of a firearm in Circuit Court of Coahoma County Cause No. 2008-0018. Petitioner was not indicted on charges of armed robbery at the time due to the witnesses' inability to positively identify Petitioner as the person who had attempted to rob them. (*See* SCR vol. 1, 9). At Petitioner's first trial, Bonnie and William saw Petitioner for the first time in person and informed the prosecution that they were certain Petitioner was the person who attempted to rob them on October 24, 2007. (*See* SCR vol. 2, 137-38). Following a mistrial, an order to *nolle prosequi* was entered in the case, and Petitioner was subsequently indicted in the instant cause for two counts of attempted armed robbery, in addition to the original charges. (*See id.*; SCR vol. 1, 9-10).[1]

Petitioner was tried in the Circuit Court of Coahoma County, and a jury convicted him of attempted armed robbery, felon in possession of a weapon, and felony fleeing.[2] He received a twenty-four year sentence for attempted armed robbery, eight years for felon firearm possession, and a five year sentence for felony fleeing. The attempted armed robbery and possession charges were ordered to run consecutively, while the fleeing charge was ordered to run

---

[1] The parties fail to inform the Court of what stage Petitioner's first trial was in when the mistrial was declared, or what precipitated it.

[2] Petitioner was indicted on two counts of attempted armed robbery, but the trial court directed a verdict in Petitioner's favor at trial as to Count II of the indictment, the attempted armed robbery charge involving Carolyn Garrett.

3

concurrently with his other sentences. (See SCR vol. 1, 46-50). He appealed his convictions and

sentences to the Mississippi Court of Appeals, which affirmed the trial court's judgment in a

written opinion on December 14, 2010. *Tugle v. State*, 68 So.3d 691 (Miss.App.2010), *reh'g*

*denied*, May 3, 2011, *cert. denied*, September 1, 2011 (Cause No. 2010-KA-00171). Petitioner

then filed an application for leave to file a petition for post-conviction relief in the Circuit Court

of Coahoma County, and the Mississippi Supreme Court entered an order denying relief on

January 23, 2013. *See* Response, Ex. B., *Tugle v. Mississippi*, Cause No. 2012-M-01917.


Petitioner, through counsel, timely filed the instant petition on or about January 17, 2013,

asserting the following grounds for relief, as paraphrased by the Court:

| | |
|---|---|
| Ground One: | Error in refusing to give an identification instruction to the jury. |
| Ground Two: | Double jeopardy. |
| Ground Three: | Ineffective assistance of trial counsel. |
| Ground Four: | Jury foreperson empowered to "ramrod" jury deliberations. |
| Ground Five: | In-court identification denied Petitioner a fair trial. |
| Ground Six: | Late discovery prejudiced Petitioner. |
| Ground Seven: | Whether the convictions were against the weight of the evidence. |
| Ground Eight: | Whether the evidence is sufficient to support conviction for flight from law enforcement. |
| Ground Nine: | Ineffective assistance of appellate counsel. |
| Ground Ten: | Actual innocence. |
| Ground Eleven: | Error in allowing in-court identification. |
| Ground Twelve: | Failure to meet due process standard of proof. |
| Ground Thirteen: | Denial of fair trial by jury. |

### Legal Standard

The Court's review of Petitioner's claim is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the

statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the

grant of federal habeas relief on any claim adjudicated on the merits in state court unless that

4

adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The Court notes that Petitioner presented all of the claims raised by the instant petition either on direct appeal or on post-conviction review. Although the Mississippi Supreme Court denied Petitioner's petition for post-conviction relief without discussing Petitioner's claims or citing to federal law, AEDPA deference nevertheless applies. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural rules to the contrary."); *see also Santellan v. Cockrell*, 271 F.3d 190, 193-94 (5th Cir. 2001) ("[I]f a state court denies a prisoner's claim without reasoning of any sort, our authority under AEDPA is still limited to determining the reasonableness of the ultimate decision."). Therefore, the Court reviews all of Petitioner's claims under the standards of 28 U.S.C. § 2254(d).

## Discussion

**Ground One: Refusal of Jury Instruction D-2**

At trial, Petitioner presented a defense of mistaken identity. On the day of the attempted armed robbery, neither William Garrett, Carolyn Garrett, nor Bonnie Brassel could identify Petitioner from a photographic lineup as the man who attempted to enter the Garrett home by force. William Garrett identified someone other than Petitioner as the individual he believed to be the attempted robber. It was not until Petitioner's first trial, when the victims saw Petitioner

in person, that William and Bonnie indicated that he was the individual who attempted to rob

them.  At his second trial, Petitioner was identified by William and Bonnie as the perpetrator.

At trial, Petitioner proposed Jury Instruction D-2 on identification, which states:

> The Court instructs the Jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and the circumstances surrounding the crime.  One of the issues in this case is the identification of DEWAYNE TUGLE as the perpetrator of the crime.  As with each element of the crime charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict DEWAYNE TUGLE you must be satisfied beyond a reasonable doubt of the accuracy of the identification of DEWAYNE TUGLE.  If, after considering all of the evidence concerning the crime and the witness' identification of DEWAYNE TUGLE as the person who committed the crime, you are not convinced beyond a reasonable doubt that he is the person who committed the crime, then you must find him not guilty.  Identification testimony is an expression of belief of impression by the witness.  You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification.  In appraising the identification testimony of a witness, you should consider the following:
> 1)  Did the witness have an adequate opportunity to observe the defendant?
> 2)  Did the witness observe the offender with an adequate degree of attention?
> 3)  Did the witness provide an accurate description of the offender after the crime?
> 4)  How certain is the witness of the identification?
> 5)  How much time passed between the crime and the identification?
> If, after examining all of the testimony and the evidence, you have a reasonable doubt that DEWAYNE TUGLE was the person who committed the crime, then you must find DEWAYNE TUGLE not guilty.

 (SCR vol. 1, 84-85).

The trial court denied the instruction because more than one witness identified Petitioner

as the perpetrator of the crime.  Petitioner maintains that D-2 was necessary to give effect to his

major defense in the case, and that it should have been allowed in light of the fact that the in-

court identification occurred only after Petitioner appeared at the previous trial, which ended in

mistrial.

The Mississippi Court of Appeals found that Jury Instruction D-2 is required, when requested, if "the identification of the accused rests entirely upon the testimony of a single witness." *Tugle*, 68 So.3d at 696. Finding that William and Bonnie both correctly identified Petitioner at trial as the individual who attempted to rob them, and that the jury was made aware of the previous misidentification, the court found no error in the trial court's refusal to grant the instruction. *Id*.

The failure of a trial court to give a jury instruction forms the basis for federal habeas relief only where the petitioner can demonstrate that the denial of the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993) (holding that jury instructions do not form the basis for federal habeas relief unless the improper instruction rose to the level of a constitutional violation).

According to Mississippi law, a defendant is entitled to an identification instruction upon request only where no more than one witnesses to the alleged crime identifies him as the guilty party. *See Warren v. State*, 709 So.2d 415, 420-21 (Miss. 1998); *Thomas v. State*, 766 So.2d 809, 811 (Miss. Ct.App. 2000). Inasmuch as William and Bonnie both identified Petitioner as the individual who attempted to rob them, the instruction appears to have been properly refused by the trial court. Petitioner has not demonstrated that the refusal of his proposed instruction infected his trial and resulted in a violation of his due process rights, and he has failed to demonstrate that the decision rejecting this claim warrants federal habeas relief.

**Ground Two:  Double Jeopardy**

Petitioner claims that he was subjected to double jeopardy when he was retried on the felony fleeing and felon in firearm possession counts, since his first trial on these counts ended in a mistrial.  He claims that "a mistrial was engineered by the law enforcement" after the witnesses saw Petitioner and could identify him as the robber.

Double jeopardy restrictions "protect[] against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 728 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  In this case, Petitioner was not acquitted of felony fleeing or felon in firearm possession prior to the trial leading to his convictions, such that double jeopardy concerns are not implicated.  His allegation that law enforcement personnel engineered a mistrial in order to have witnesses identify Petitioner is a conclusory allegation that fails to "raise a constitutional issue in a habeas proceeding."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  This claim does not warrant federal habeas relief and will be dismissed.

**Grounds Three and Nine:  Ineffective Assistance of Counsel**

Petitioner claims that his trial counsel rendered ineffective assistance by failing to (1) raise a claim of double jeopardy as to his felony fleeing and felon in possession of a firearm charges; (2) object to the in-court identification by the victim; (3) authenticate the telephone call from witness Dawn Holmes to Petitioner, which would have purportedly validated his alibi defense; and (4) object to jury instruction C-22, which informed the jury that "the fact that a defendant has been indicted is not evidence of the facts charged in the indictment and should not be considered as evidence of guilt."  (SCR vol. 1, 77).  He also maintains that his appellate

attorney performed ineffective by failing to raise as an issue on appeal the fact that the jury was improperly instructed regarding intent.

A claim of ineffective assistance of counsel requires the petitioner to demonstrate that counsel rendered deficient performance that prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner demonstrates deficient performance when he shows "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. Whether counsel's performance was deficient requires consideration of whether counsel's performance was objectively reasonable under prevailing professional norms. *Day v. Quarterman,* 566 F.3d 527, 536 (5th Cir. 2009). In evaluating counsel's performance, courts presume that counsel rendered reasonable professional judgment. *See id.*; *Strickland*, 466 U.S. at 689.

Petitioner can establish prejudice as a result of counsel's performance if he can show that the outcome of his trial would have been different but for counsel's alleged errors, and that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quotation omitted). A petitioner must establish both prongs of the *Strickland* test to prevail on his claim of ineffective assistance. *See, e.g., Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998).

Because all of Petitioner's claims of ineffective assistance have been adjudicated on the merits in State court, the Court's inquiry is "whether the state court's application of the *Strickland* standard was unreasonable," which is a "doubly" deferential inquiry. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Evaluating each of Petitioner's claims of ineffective assistance by this standard, Petitioner fails

to establish that he is entitled to relief.

First, Petitioner was not tried twice for the same offense or subjected to multiple punishments for the same offense, so there was no basis for counsel to raise a claim of double jeopardy as to the felony fleeing and felon in possession of a firearm counts. *See Monge*, 524 U.S. at 728. Counsel does not perform ineffectively in failing to make meritless objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

Second, defense counsel did object to the in-court identification of Petitioner by both Bonnie and William Garrett. (*See, e.g.*, SCR vol. 2, 165; SCR vol. 3, 283). Therefore, Petitioner can not claim that counsel performed ineffectively in failing to object. Additionally, the Court notes that Petitioner has not otherwise demonstrated that the victims' in-court identification of Petitioner was improper, and counsel "is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Third, Petitioner maintains that counsel failed to properly authenticate a telephone bill, which he alleges denied him of an alibi defense. At trial, Dawn Holmes testified for the defense that she placed a telephone call to Petitioner's cell phone at 10:49 a.m. on the day of the crimes, and that she spoke to him for seventeen minutes. (*See* SCR vol. 4, 329-31). Petitioner testified that his phone bill, prepared by Ruthie Lott at Unicell, corroborated Holmes' testimony. (*See id.* at 345-47).[3] The trial judge prohibited Petitioner from introducing the phone bill, however, because Petitioner did not prepare the document and could not authenticate it. (*See id.* at 348-

---

[3] Ruthie Lott, incidentally, owned the parked car that Petitioner crashed into while attempting to flee from law enforcement. She testified at Petitioner's trial but was not questioned about the Unicell phone records. (SCR vol. 4, 306-12).

49). Assuming without deciding that counsel performed deficiently in failing to call Ruthie Lott to authenticate Petitioner's cellular telephone records, and that the records indeed showed that he was engaged in a telephone call around the time of the events in this case, the Court nevertheless determines that Petitioner fails to demonstrate that he was prejudiced by his inability to place his phone records into evidence. Petitioner was able to present his alibi defense to the jury through his testimony and the testimony of Dawn Holmes, even if the telephone bill itself was inadmissible. Therefore, the Court determines that the State court's rejection of this claim does not warrant federal habeas relief, and it will be dismissed.

Next, Petitioner maintains that counsel performed ineffectively in failing to challenge jury instruction C-22, which states: "The Court instructs the jury that the fact that a defendant has been indicted is not evidence of the facts charged in the indictment and should not be considered as evidence of guilt." (SCR vol. 1, 77). Petitioner has not presented any argument for why this instruction was improper, and the Court finds it conclusory and without merit. *See, e.g., Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008) (denying habeas petition including mere conclusory allegations). Federal habeas relief is not warranted on this claim, and it will be dismissed.

Finally, the Court considers Petitioner's claim that his appellate counsel rendered ineffective assistance, which is a claim also governed by the two-pronged *Strickland* standard. *See Evitts v. Lucey*, 469 U.S. 387, 397-99 (1985). Petitioner claims that appellate counsel rendered ineffective assistance in failing "to raise review of the granted Intent Instruction S-3 over objection by Defense counsel[.]" (Pet. at 7). As stated in the record, Jury Instruction S-3 reads: "The Court instructs the Jury that intent may be inferred from the overall circumstances

11

in which a criminal act is committed including the time and manner of the Defendant's conduct. Intent is a state of mind and is seldom proved through direct evidence." (SCR vol. 1, 82). The trial court gave the instruction over defense counsel's objection, finding it to be an accurate statement of the law.

On appeal, counsel filed a brief on Petitioner's behalf that raised four issues, among them a claim of whether it was error for the trial court to refuse an identification instruction. Given the broad discretion afforded to appellate attorneys in determining which issues have the best chance of success, the Court can not conclude that the decision rejecting Petitioner's challenge to appellate counsel's performance warrants federal habeas relief. *See, e.g., Jones v. Barnes*, 463 U.S. 745, 751-54 (1985) (holding that appellate attorney does not have duty to raise every colorable claim on appeal). None of Petitioner's claims of ineffective assistance of counsel warrant federal habeas relief, and they will be dismissed.

**Ground Four: Jury foreperson empowered to "ramrod" jury deliberations**

Petitioner argues that the trial court erred in requiring the jury to elect a foreperson whose task it was to ensure that all individual jurors participated in deliberations. This instruction, he maintains, "empowered [the foreperson] to ramrod jury deliberations." (Pet. at 6). Before dismissing the jury to their deliberations, the trial judge stated:

> [U]pon first going back to the jury room, select from among yourselves someone to serve as foreman of the jury It is the task of the foreman to make sure that everyone engages in or participates in the discussion. If you find that any one or more individual's not doing that, then you are to single that person out, call upon that person to get his or her opinion about each count in the indictment that you are to consider; about each aspect of your discussions. No one is to monopolize the discussions. Make sure that no one talks two or three times until each of the 12 of you will have had an opportunity to discuss the matter on each issue at least once.

(SCR vol. 5, 452). Petitioner offers no authority or argument in support of this claim, and the Court finds no error in the trial judge's statement to the jurors. The Court determines that Petitioner's allegations as to this ground are conclusory and fail to warrant federal habeas relief. *See, e.g., Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

**Grounds Five and Eleven: In-court identification**

On the day of the crime, neither Bonnie Brassell nor William Garrett could positively identifiy Petitioner from a photographic lineup as the person who attempted to rob them. Petitioner argues that they were able to make a positive in-court identification of him at his second trial only because they saw him as the defendant at his first trial, which resulted in a mistrial. Petitioner maintains that the in-court identification of him at his second trial should not have been allowed, and that it denied him a fair trial.

On direct appeal, the Mississippi Court of Appeals noted that Bonnie stated at Petitioner's second trial that she could not identify Petitioner from a photographic lineup she was shown at the time of the crime, but that she could positively identify him as the man in the Garretts' yard after she saw him in person. *Tugle*, 68 So.3d at 693. The court also found that Deputy Mabsby testified at Petitioner's second trial that neither William, Carolyn, or Bonnie could make a positive identification of Petitioner based upon a photographic lineup, and that William actually picked a photograph that was not Petitioner. *Id.* Finally, it noted that William testified at Petitioner's second trial that he had initially misidentified the robber when he first viewed the photographs, even though he identified Petitioner in court as the individual who attempted to rob him. *Id.* at 693-94.

Petitioner fails to support his claim with any analysis or argument, and the Court finds it

13

conclusory and insufficient to warrant federal habeas relief.  *See, e.g., Koch*, 907 F.2d at 530.

Moreover, it is clear from the record that the jury was made aware that none of the witnesses at

Petitioner's second trial were initially able to positively identify Petitioner as the robber, and

defense counsel cross-examined the witnesses as to their inability to do so.  (*See, e.g.*, SCR vol.

2, 137, 182, 243, 254, 284, 287).  Therefore, Petitioner has not shown that these claims  warrant

federal habeas relief, and they will be dismissed .

**Ground Six:  Late discovery**

Petitioner maintains that he was prejudiced when the State failed to timely disclose that

its witness, Bonnie Brassel, would identify Petitioner as the robber, noting that she first made an

identification of Petitioner as the robber at his previous mistrial of the two lesser charges.  Had

the trial been stopped and defense counsel allowed an opportunity to investigate, Petitioner

maintains, counsel could have discovered that the previous mistrial was engineered in order to

allow Petitioner to be retried on the two lesser charges along with an included attempted armed

robbery count.

When Bonnie made an in-court identification of Petitioner at his second trial, defense

counsel objected and argued a discovery violation.  (*See* SCR vol. 2, 136-37).  After defense

counsel requested that he be provided a transcript of Bonnie's testimony from the first trial, the

trial judge continued the case to allow defense counsel time to review the transcript.  (*Id*. at 137-

49).  When Petitioner's trial resumed a day and a half later, defense counsel stated his continuing

objection to Bonnie's in-court identification but abandoned his objection as to the discovery

violation.  Defense counsel maintained that it would be unfairly prejudicial to allow the in-court

identification after Bonnie could not identify Petitioner at the time of the crime or at his first

14

trial. The prosecutor argued that Bonnie informed him at Petitioner's first trial that, after seeing Petitioner in person, she was sure he was the person who tried to rob her and William. (SCR vol. 2, 149-50; SCR vol. 3, 151-60). After hearing arguments on the matter, the trial court overruled defense counsel's objection, finding Bonnie's testimony to be more probative than prejudicial. (*See* SCR vol. 3, 163).

On direct appeal, the Mississippi Court of Appeals noted that the trial court had continued the trial to allow defense counsel an adequate opportunity to review Bonnie's former testimony and prepare for her testimony in the instant trial. *Tugle*, 68 So.3d at 696-97. Finding that the trial court's actions comported with the guidelines for reviewing allegations of discovery violations as set forth in *Randolph v. State*, 852 So.2d 547, 564 (Miss. 2002), and noting that defense counsel otherwise abandoned his objection to the alleged discovery violation after having been afforded an opportunity to review Bonnie's transcript from the prior trial, the court found the issue without merit. *Id.* at 697.

The record demonstrates that the trial court followed the appropriate guidelines in resolving defense counsel's allegation that a discovery violation had been committed, and counsel otherwise abandoned his objection at trial. Petitioner has not demonstrated that the decision rejecting this claim warrants federal habeas relief, and it will be dismissed.

**Ground Seven: Convictions against the weight of the evidence**

Petitioner next argues that his convictions for attempted armed robbery and felon in possession of a firearm are not supported by the weight of the evidence. This Court "has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985). Therefore,

15

this claim does not warrant federal habeas relief, and it will be dismissed.

Out of an abundance of caution, the Court also notes that the sufficiency of the evidence may be challenged by a federal habeas petition, but only where the evidence, viewed in the light most favorable to the prosecution, is such that no rational factifinder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979). The Mississippi Court of Appeals found it reasonable for Petitioner's jury to conclude he was guilty of both attempted armed robbery and being a felon in possession of a firearm based on the testimony given at trial. *Tugle*, 68 So.3d at 697-98. At trial, William testified that Petitioner tried to take money from him by force and against his will by pointing a gun at him and putting him in fear of immediate injury. (*See, e.g.*, SCR vol. 3, 278-85). Petitioner stipulated that he had been previously convicted of a felony. (*See* SCR vol. 3, 291. Therefore, even if the Court were to construe Petitioner's claim as a challenge to the sufficiency of the evidence, federal habeas relief is not warranted.

**Grounds Eight and Twelve: Sufficiency of the evidence**

Petitioner argues that the State failed to meet its burden of proof to justify a conviction on any of the three counts for which he was convicted. As previously stated, a habeas petition can challenge the sufficiency of the evidence when the evidence, viewed in the light most favorable to the prosecution, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a resasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992)

(citation omitted).

Citing the statutes relevant to Petitioner's felony fleeing conviction, the Mississippi Court of Appeals found that the testimonies of Deputy Magsby and Petitioner provided evidence sufficient to satisfy the necessary elements for a felony fleeing conviction and dismissed his claim that the evidence was insufficient to support the conviction. *Tugle,* 68 So.3d at 698. Specifically, the court noted that a misdemeanor is committed when the driver of a motor vehicle ignores a law enforcement officer's signal to stop when the signal is given during the course of the officer's "lawful performance of duty[,]" and he has "reasonable suspicion to believe that the driver in question has committed a crime[.]" *Id.*, citing Miss. Code Ann. § 97-9-72(1). The punishment is enhanced, however, when the driver of the vehicle operates it in a manner indicating "a reckless or willful disregard for the safety of persons or property . . . or. . . in a manner manifesting extreme indifference to the value of human life." *Id.*, citing Miss. Code Ann. § 97-9-72(2).

At trial, Deputy Magsby testified that he observed Petitioner fail to make a complete stop at a stop sign, and that Petitioner failed to pull over once Magsby activated his blue lights. (*See* SCR vol. 3, 211-14). He testified that Petitioner sped up in response, hydroplaning and losing control of the truck twice, before he finally lost control of the truck and hit a parked car. (*Id.* at 211-216). Petitioner, though he denied running from police or losing control of the vehicle, admitted that he crashed into Ruthie Lott's car and left the scene because he was afraid she would call the police. (*See, e.g.*, Trial Tr. vol. 4, 351-56).

William Garrett testified that he was afraid for his life when Petitioner brandished a pistol at him and attempted to take property from William against his will. (SCR vol. 3, 278-79, 285).

17

Petitioner stipulated that he had previously been convicted of a felony. (SCR vol. 3, 291). Therefore, the evidence presented also shows that Petitioner unlawfully, willfully, knowingly, and feloniously possessed a firearm after conceding that he had been convicted of a felony crime. (*See* SCR vol. 2, 24; SCR vol. 3, 231).

Inasmuch as the evidence, when viewed in the light most favorable to the prosecution, is not such that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt, the rejection of this claim does not warrant federal habeas relief. *See, e.g., Jackson v. Virginia*, 443 U.S. 307 (1979). These grounds will be dismissed.

**Ground Ten: Actual innocence**

Petitioner claims that he is actually innocent of the crimes for which he stands convicted. This claim is not cognizable on federal habeas review as a substantive claim. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). This claim does not warrant federal habeas relief, and it will be dismissed.

**Ground Thirteen: Denial of a fair trial, due process of law, and fundamental fairness**

Petitioner argues that he "was denied a fair trial by jury, due process of law[,] and fundamental fairness." (Pet. at 7). Petitioner offers no citations to the record or to any authority supporting this claim, and he fails to offer any argument in support. The Court finds the argument conclusory and insufficient to warrant federal habeas relief. *See, e.g., Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

**Certificate of Appealability**

18

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is made when the Petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, the Court concludes that a COA should be denied in this case.

**Conclusion**

The Court determines that none of the claims raised by Petitioner warrant federal habeas relief. It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. All pending motions are dismissed as moot. A judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 6th day of May, 2013.

 **/s/ Sharion Aycock**
 **U.S. DISTRICT JUDGE**